UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EFREM WALKER,

    Plaintiff,

vs.                                                                            Case No. 11-11745

ASMAR CENTER, LLC,                           HON. AVERN COHN

    Defendant.

_____/

## MEMORANDUM AND ORDER
## DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 9)[1]

### I. Introduction

This a public accommodation disability discrimination case. Plaintiff Efrem Walker, is suing defendant Asmar Center, LLC, claiming that defendant's facility fails to comply with Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181, et seq.[2] He seeks injunctive relief and litigation expenses.

Before the Court is defendant's motion for summary judgment on the grounds that (1) Walker lacks standing and (2) Walker did not exhaust his administrative remedies. For the reasons that follow, the motion will be denied.

### II. Background

Walker uses a wheelchair and is an individual with a disability for purposes of the

---

[1] The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

[2] Walker also claimed a violation of Michigan's Persons With Disabilities Civil Rights Act, M.C.L. § 37.1101, et seq., but later stipulated to withdraw that claim along with his request for economic damages. See Doc. 12.

ADA.[3]  Walker resides in Pontiac, Michigan.  Defendant owns a business, known as M-59 Plaza, in Waterford, Michigan.  The M-59 Plaza is a commercial retail property with a variety of retailers leasing space from defendant.  Currently, there is a coin laundry, coney island restaurant, hockey equipment retailer, Subway restaurant, a paycheck advance store, physical therapist, indoor horticulture equipment dealer, and a community theater leasing space.

On March 9, 2011, Walker visited the M-59 Plaza.  According to his deposition, Walker visited the coney island where he used the restroom.  He also visited the hockey equipment retailer and the Subway restaurant where he purchased some food.   In his complaint, he alleges that the M-59 Plaza is non-ADA compliant in terms of accessibility, beginning with the parking lot.  The complaint does not specify which retailer within the M-59 Plaza is not compliant.  However it allege that counter-tops are not of the proper height and alleges problems with the restrooms.  Walker testified at deposition and states in an affidavit[4] that he has not returned to the M-59 Plaza since March 2011 and has no intent to return until the violations are fixed.

---

[3]Walker testified at deposition that he has been listed as a plaintiff in other lawsuits, although he did not know how many times or in what court those cases were pending.  A search of the Court's electronic filing system shows Walker is listed as a plaintiff in sixty (60) cases in this district dating back to 2003.  Some of the cases list Disabled Patriots of America and Walker as plaintiffs.  Others list just Walker.  From a cursory review, all of the cases appear to be public accommodation cases under Title III of the ADA.

[4]Defendant contends that Walker's affidavit contradicts his deposition testimony and therefore should not be considered.  The Court disagrees.  A careful review of both shows that Walker is supplementing, not contradicting, his deposition testimony.

III. Legal Standard

Although defendant moved under Fed. R. Civ. P. 56, the more appropriate rule for its standing argument is Fed. R. Civ. P. 12. Rule 12(b)(1) provides for a motion to dismiss for lack of jurisdiction and applies when a party argues a lack of standing. As an Article III court, this Court only has the power to resolve actual cases and controversies. U.S. Const. art. III, § 2; Sprint Commc'ns Co., L.P. v. APPCC Servs., Inc., --- U.S. ----, ----, 128 S.Ct. 2531, 2535 (2008). The case or controversy requirement is only satisfied if the Court can satisfy itself that the plaintiff has standing. DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006). Standing is evaluated based on the facts as they existed at the time the complaint was filed. Cleveland Branch, NAACP v. City of Parma, 263 F.3d 513, 524 (6th Cir. 2001).

Defendant's argument as to exhaustion falls under Rule 56 because exhaustion of administrative remedies is an affirmative defense. See Hood v. Ford Motor Co., No. 11–10649, 2011 WL 3651322, *8 (E.D. Mich. Aug. 19, 2011). Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Showing that there is some metaphysical doubt as to the

material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see Anderson, 477 U.S. at 249–50.

## IV.  Standing

### A.  Standing Generally

The party seeking federal court action has the burden of establishing standing. Rosen v. Tenn. Comm'r of Fin. & Admin., 288 F.3d 918, 927 (6th Cir. 2002). This burden increases as the litigation proceeds. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (standing elements must be proven "with the manner and degree of evidence required at the successive stages of litigation"). Because defendant is making a factual attack upon Walker's allegations of subject-matter jurisdiction, generalized allegations of standing will not suffice. Ctr. For Biological Diversity v. Lueckel, 417 F.3d 532, 537 (6th Cir.2005). Instead, Walker must " 'set forth specific facts,' in affidavits or through other evidence, demonstrating that each element of standing is satisfied." Id. (quoting Fed. R. Civ. P. 56).

To establish standing, a plaintiff must demonstrate: 1) he has suffered an "injury in fact," that is, "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; 2) a causal connection between the injury and the challenged conduct, that is, "the injury has to be fairly ... traceable to the challenged action of the defendant, and not ... the result [of] the

independent action of some third party not before the court"; and 3) the injury's redressability by a favorable judicial decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); see also Doe v. Porter, 370 F.3d 558, 562 (6th Cir. 2004). See also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180-81 (2000).

Where, as here, a plaintiff seeks injunctive relief, he must demonstrate that there is a non-speculative, imminent threat of repeated injury to establish that there is an injury in fact. City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983); Fieger v. Michigan Supreme Court, 553 F.3d 955, 966 (6th Cir. 2009). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing present adverse effects." O'Shea v. Littleton, 414 U.S. 488, 495 (1974). " 'Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate-as opposed to merely conjectural or hypothetical-threat of future injury.' " Church v. City of Huntsville, 30 F.3d 1332 (11th Cir. 1994); accord Whitmore v. Arkansas, 495 U.S. 149, 158(1990) ("A threatened injury must be certainly impending to constitute injury in fact" (internal quotation marks omitted)).

### B.  Standing under Title III

"Congress enacted the ADA in 1990 to remedy widespread discrimination against individuals." PGA Tour, Inc. v. Martin, 532 U.S. 661 (2001). Title III of the ADA applies to discrimination by places of public accommodation. The statute provides that:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who

owns, leases, (or leases to) or operates a place of public accommodation. 42 U.S.C. § 12188(a). It is not disputed that the M-59 Plaza is a place of public accommodation as defined by Title III. Private litigants suing under Title III are entitled only to injunctive and declaratory relief. See 42 U.S.C. § 12188; Association for Disabled Americans, Inc. v. Concorde Gaming Corp., 158 F. Supp. 2d 1353, 1358 (S.D. Fla. 2001); Powers v. MJB Acquisition Corp., 993 F. Supp. 861, 867 (D. Wyo. 1998); Fischer v. SJB-P.D., Inc., 214 F.3d 1115, 1120 (9th Cir. 2000); American Bus Assoc. v. Slater, 231 F.3d 1 (D.C. Cir. 2000); Stan v. Wal-Mart Stores, Inc., 111 F. Supp. 2d 119, 124 (N.D.N.Y. 2000).

In the ADA context, courts have held that a plaintiff must establish a likelihood of returning to the defendant's business to demonstrate a real threat of future harm. See, e.g., Steger v. Franco, Inc., 228 F.3d 889, 893 (8th Cir. 2000); Pickern v. Holiday Quality Foods, Inc., 293 F.3d 1133, 1137-38 (9th Cir. 2002); Molski v. Arby's Huntington Beach, 359 F. Supp. 2d 938, 946 (C.D. Cal. 2005); Parr v. L & L Drive-Inn Rest., 96 F. Supp. 2d 1065, 1079-80 (D. Haw. 2000) (plaintiff must demonstrate a sincere intent to return); Davis v. Flexman, 109 F. Supp. 2d 776, 784 (S.D. Ohio 1999) (patient lacked standing to seek injunctive relief under ADA where there was no evidence that she intended to return to the clinic).

To this end, courts have considered: "(1) the proximity of defendant's business to plaintiff's residence, (2) the plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant." D'lil v. Stardust Vacation Club, No. 2:00-CV-01496, 2001 WL 1825832, at *3 (E.D. Cal. Dec.21, 2001); Vaughn v. Rent-a-Center, No. 2:06-CV-1207, 2009 WL

723166 (S.D. Ohio March 16, 2009).[5]  The gravamen of defendant's motion is that Walker does not have standing in light of these factors.  The Court disagrees.

### C.  Walker's Standing

Considering the first factor regarding the proximity of the defendant's business to Walker's residence, it is likely that Walker will return to the M-59 Plaza.  Walker resides only seven (7) miles away.  While defendant makes much of the fact that there are other similar stores, particularly Subway restaurants, closer to Walker's home, those facts are not sufficient.  Walker has stated he would return to the M-59 Plaza if the barriers were removed.  This is not the case where a plaintiff resides far from defendant's business such that the plaintiff would be unlikely to return.  Courts have noted that a plaintiff's distance from the defendant's place of business becomes especially significant when it is more than 100 miles.  See Molski v. Mandarin Touch Restaurant, 385 F. Supp. 2d 1042, 1045 (D. Cal. 2005) ("[C]ourts have consistently held that it weighs against finding a reasonable likelihood of future harm" when the distance is more than 100 miles).  Thus, this factor weighs in Walker's favor.

The second factor is whether Walker's past patronage of the M-59 Plaza makes it likely that he will return.  There is no dispute that Walker went into three stores and made a purchase there.  As defendant's business is not far from Walker's home and offers a variety of stores, it is not inconceivable that should Walker be in the vicinity again, that he would visit the M-59 Plaza.

---

[5]Walker argues that this "proximity" test violates his fundamental right to travel. The Court declines to address this argument in light of finding that Walker has satisfied the test.

The third factor is the definitiveness of Walker's plans to return. Walker need not express a concrete plan to return to the M-59 Plaza, but he must "assert[ ] some credible reason for his desire to return to the property in question." Id. While defendant was able to extract during Walker's deposition that there are other similar stores closer to his home, there is nothing in the ADA which would excuse a defendant from liability simply because a plaintiff was able to access similar a business closer to their home. Again, the M-59 Plaza is in close proximity to Walker's home. While he has stated he has no plans to return to defendant's business, he says this is because is it not ADA compliant. Courts have held that a plaintiff is not required to engage in a futile gesture of returning to alleged non-compliant property. See Access 4 All, Inc. v. OM Management, LLC, No. 06-374, 2007 WL 1455991, *8 (S.D. Ohio. May 15, 2007) (stating that "Article III cannot require an ADA plaintiff to continue to be subjected to injury in order to have standing to seek injunctive relief; nor is it required for a plaintiff that has previously experienced injury to 'jump through a hoop' of highlighting future use in order to prove 'actual and imminent' injury. Because the injury is part of the hotel structure, the injury is always 'actual and imminent' and will continue to hold that status until the property becomes ADA compliant").

The final factor is whether the frequency of Walker's visits to defendant's business indicates that is it likely that he will return. Walker only visited the M-59 Plaza once. While he says he has no plans to return, that is because of his allegations of non-compliance. This factor is not as strong in Walker's favor, but is not sufficient to find he lacks standing.

Because the balance of the factors in this case weigh in favor of finding that

Walker is likely to return to defendant's property, Walker has standing to bring this suit.

V. Exhaustion

Defendant argues that it is entitled to summary judgment because Walker did not pursue his administrative remedies under the ADA. Walker argues that Title III of the ADA does not require administrative exhaustion. The issue of exhaustion arises from differing interpretations of the enforcement provision of the ADA. Defendant acknowledges that the courts are split on the issue, with no controlling case from the Sixth Circuit. Walker cites a case from the Southern District of Ohio which considered the issue in detail, concluding that exhaustion was not required. The district court's careful analysis bears repeating:

> The ADA explicitly adopts enforcement provisions of Title VII of the Civil Rights Act of 1964: "The remedies and procedures set forth in section 2000a–3(a) of this title are the remedies and procedures this subchapter provides to any person who is being subjected to discrimination on the basis of disability in violation of this subchapter...." 42 U.S.C. § 12188. Section 2000a–3(a) of Title 42 allows an aggrieved person to seek injunctive relief. Section 2000a–3(a) is limited, however, by § 2000a–3(c). Section 2000a–3(c) requires an aggrieved party to first seek relief from the appropriate state or local body before filing a federal law suit, if state or local law prohibits the same alleged discriminatory act or practice prohibited by federal law.
> Defendant correctly points out that the Ohio Civil Rights Act prohibits the same discriminatory conduct as Title III of the ADA.[6] The Ohio Act prohibits "any proprietor, or any employee, keeper, or manager of a place of public accommodation to deny any person [on the basis of] ... handicap ... the full enjoyment of the accommodations, advantages, facilities, or privileges of the place of public accommodation." Ohio Revised Code Section 4112.02(G). Defendant argues, therefore, that 42 U.S.C. § 2000a–3(c) requires the Plaintiff to have first sought relief from the Ohio Civil Rights Commission before filing this suit. Plaintiff disputes Defendant's interpretation. Plaintiff argues that the ADA enforcement provision explicitly adopts § 2000a–3(a) only and that the administrative exhaustion provision of § 2000a–3(c) is inapplicable.

---

[6]Like Ohio's Civil Rights Act, Michigan's Persons With Disabilities Civil Rights Act, M.C.L. § 37.1101, et seq. prohibits the same discriminatory conduct as the ADA.

9

The Sixth Circuit has not addressed this issue, and the few district courts that have are split. On one side are the courts that have determined that the Title III of the ADA could have adopted the entirety of § 2000a–3, but chose to explicitly adopt § 2000a–3(a) only. These courts have concluded that the exhaustion requirement of *934 § 2000a–3(c) is not a part of Title III of the ADA. See Botosan v. Fitzhugh, 13 F.Supp.2d 1047 (S.D.Cal.1998); Doukas v. Metropolitan Life Ins. Co., No. CIV. 4–478–SD, 1997 WL 833134 (D.N.H. Oct. 21, 1997); Bercovitch v. Baldwin Sch., 964 F. Supp. 597 (D. Puerto Rico 1997) rev'd on other grounds 133 F.3d 141 (1st Cir.1998); Soignier v. American Bd. of Plastic Surgery, No. 95 C 2736, 1996 WL 6553 (N.D. Ill. Jan. 8, 1996). The Botosan court based its conclusion not only on the statutory text, but also on the legislative history. The court states that the congressional "Joint Explanatory Statement of the Committee of Conference" is ambiguous, but cites to a floor statement of Senator Harkin that the ADA only imposes the exhaustion requirement in employment contexts. See 1998 WL 458195, at *2.

Other courts have concluded that Title III of the ADA does require administrative exhaustion. Two courts have applied § 2000a–3(c) to Title III without explanation. See Daigle v. Friendly Ice Cream Corp., 957 F. Supp. 8, 9 (D.N.H.1997); Howard v. Cherry Hills Cutters, Inc., 935 F. Supp. 1148, 1150 (D. Colo. 1996). Others have concluded that the statutory text is ambiguous and have based their conclusion that exhaustion was required on the legislative history. "The legislative history indicates that Congress wished ... [to give] people discriminated against on the basis of disability the same means of redress possessed by people discriminated against on the basis of distinctions that the law already prohibited.." Snyder v. San Diego Flowers, 21 F. Supp. 2d 1207, 1210 (S.D. Cal. 1998); see also Mayes v. Allison, 983 F. Supp. 923, 925 (D. Nev.1997) (citing the Joint Explanatory Statement of the Committee of Conference in support). The Mayes court also cited the Department of Justice interpretation that the ADA incorporates the attorney's fees statutory section, § 2000a–3(b), even though it is not expressly mentioned in the ADA enforcement provision. See 983 F. Supp. at 925. The Department of Justice interpretation implied that the ADA intended to incorporate provisions other than § 2000a–3(a). See id. Interestingly, the Snyder and Mayes courts both granted stays to allow the plaintiff to comply with the exhaustion requirements without dismissing the federal actions. See 21 F. Supp. 2d at 1211; 983 F. Supp. at 926.

This Court follows traditional canons of statutory construction in reaching its conclusion that the ADA does not incorporate the administrative exhaustion requirements of § 2000a–3(c). All questions of statutory construction must start with the plain language of the text itself. See Vergos v. Gregg's Enterprises, Inc., 159 F.3d 989, 990 (6th Cir. 1998). If the language of the text is clear, courts need look no further. If, however, the language is ambiguous or if the plain meaning would result in an absurdity, an inconsistency, or a result at odds with the intent of Congress, then a court can look beyond the language of the statute. See id. The Court concludes that the text of 42 U.S.C. § 12188 is unambiguous. The text specifically incorporates only § 2000a–3(a): "[t]he remedies and

> procedures set forth in section § 2000(a)–3(a) of this title...." 42 U.S.C. § 12188(a)(1).  To hold that the entirety of § 2000a–3 is adopted is to impermissibly render superfluous the explicit textual reference to § 2000(a)–3(a).  <u>See United States v. Sanders</u>, 162 F.3d 396, 400 n. 7 (6th Cir.1998). Moreover, this interpretation is consistent with the well-established rule of statutory construction—expressio unius est exclusio alterius—that if a statute mentions specific subjects those not mentioned are presumed to be excluded.  <u>See Doukas</u>, 1997 WL 833134, at *3.
>
> Therefore, the Court concludes that Plaintiff was not required to exhaust his administrative remedies by filing a complaint with the Ohio Civil Rights Commission before instituting this action.

<u>Guzman v. Denny's Inc.</u>, 40 F. Supp. 2d 930, 933-34 (S.D. Ohio 1999).

The Court agrees with <u>Guzman's</u> reasoning and conclusion.  As such, Walker is not required to exhaust any administrative remedies before filing suit.

### VI.  Conclusion

For the reasons stated above, Walker has standing and is not required to exhaust any administrative remedies before filing suit.  Accordingly, defendant's motion is DENIED.

SO ORDERED.


Dated:  November 15, 2011          S/Avern Cohn
                                   AVERN COHN
                                   UNITED STATES DISTRICT JUDGE



I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, November 15, 2011, by electronic and/or ordinary mail.


                                   S/Julie Owens
                                   Case Manager, (313) 234-5160